NICOLE R. MCATEE, CA Bar No. 288700
nicole.mcatee@ogletree.com
DAVID SZWARCSZTEJN, CA Bar No. 272371
david.szwarcsztejn@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA  90071
Telephone:  213-239-9800
Facsimile:   213-239-9045

Attorneys for Defendant
MYDATT SERVICES, INC., dba BLOCK BY BLOCK

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CESAR J BARRIOS GARAY, individually and on behalf of those similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>MYDATT SERVICES, INC., dba BLOCK BY BLOCK, an Ohio Corporation; and DOES 1 through 10, inclusive,<br><br>      Defendants. | Case No. 2:22-cv-469<br><br>**DEFENDANT MYDATT SERVICES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**<br><br>[Filed concurrently with Civil Cover Sheet; Certificate of Interested Parties; Declarations of Christina Michelle Scheible and William Stejskal]<br><br>Complaint Filed: December 17, 2021<br>Trial Date:     None |

PLEASE TAKE NOTICE THAT Defendant Mydatt Services, Inc. DBA Block By Block ("Defendant"), by and through the undersigned counsel, removes the above-entitled action from the Superior Court of the State of California for the County of Los Angeles to the United States District Court for the Central District of California pursuant to 28 U.S.C. Sections 1332, 1441(a) and 1446. In support of such removal, Defendant alleges as follows:

## I.   PROCEDURAL BACKGROUND

On December 17, 2021, Plaintiff Cesar J. Barrios Garay ("Plaintiff") commenced a class action in the Superior Court of the State of California for the County of Los Angeles entitled *Cesar J Barrios Garay, individually, and on behalf of other members of those similarly situated; Plaintiff, v. Mydatt Services, Inc., DBA Block By Block, an Ohio corporation; and DOES 1 through 10, inclusive; Defendants*, Case No. 21STCV46157.

Defendant received service of the Summons and Complaint on December 22, 2021. Copies of the Summons, Complaint, and all other documents served on Defendant are attached as "**Exhibit A**."

On or about January 21, 2022, Defendant filed its Answer to the Complaint in the Los Angeles Superior Court, a true and correct copy of which is attached as "**Exhibit B**."

Plaintiff's Complaint alleges seven causes of action: (1) violation of California Labor Code §§ 510 and 1198 (unpaid overtime); (2) violation of California Labor Code §§ 1194, 1197, and 1198 (unpaid minimum wages); (3) violation of California Labor Code §§ 226.7, 512, 516 and 1198 (failure to provide meal periods); (4) violation of California Labor Code § 226.7, 512, 516 and 1198 (failure to provide rest periods); (5) violation of California Labor Code § 226(a) (failure to timely furnish accurate itemized wage statements); (6) violation of California Labor Code §§ 2802 (failure to reimburse business expenses); and (7) violation of California Business & Professions Code §§ 17200 *et seq.*

## II. CLASS ACTION FAIRNESS ACT JURISDICTION

The Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).  As such, this action may be removed to this Court by Defendant pursuant to 28 U.S.C. § 1441, 1446 and 1453.

### A. Number of Putative Class Members.

Plaintiff purports to bring this action on behalf of "[a]ll persons who have been, or currently are, employed by Defendant and who held, or hold, job positions which Defendant has classified as 'non-exempt' employees in the State of California, at any time since four years prior to filing this action, through the date judgment is rendered in this action." (Compl. ¶ 52.)  Assuming that the putative class, as defined by Plaintiff's Complaint, comprises all non-exempt employees employed by Defendant in California at any time from December 17, 2017 to the present, the putative class includes at least 2,009 persons.  (Declaration of Christina Michelle Scheible ("Scheible Decl.") ¶ 3).

### B. Diversity of the Parties.

The minimal diversity requirement of 28 U.S.C. § 1332(d) is met in this action because the citizen of at least one class member is diverse from the citizenship of at least one defendant. *Id*. at (d)(2)(A).  Plaintiff, a putative class member, is a citizen of the State of California.  Defendant is now, and ever since this action commenced has been, incorporated under the laws of Ohio. (Declaration of William Stejskal ("Stejskal Decl.") ¶ 3).  Further, at all relevant times, Defendant's high-level officers direct, control, and coordinate the corporation's activities from Nashville, Tennessee. (*Id*. ¶¶ 4-5).  Additionally, Defendant's administrative functions, such as payroll, benefits administration, and finance are conducted in Nashville, Tennessee. (*Id*.)  Thus, Defendant is a citizen of the state of Ohio, its place of incorporation, and Tennessee, its principal place of business.  28 U.S.C. § 1332(c); *see also Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010).  Citizenship of "Doe" defendants is disregarded for purposes of removal.  28 U.S.C. § 1441(b)(1); *McCabe v. Gen. Foods Corp*., 811 F.2d

1336, 1339 (9th Cir. 1987).

### C. Amount in Controversy.

Based on the allegations in the Complaint, the alleged amount in controversy exceeds, in the aggregate, Five Million Dollars ($5,000,000.00), as demonstrated below.[1]

**First Cause of Action – Unpaid Overtime.** Plaintiff alleges: "Defendant has engaged in, among other things a system of willful violations of the California Labor Code and the applicable IWC Wage Orders by creating and maintaining policies, practices and customs that knowingly deny employees the above stated rights and benefits." (Compl. ¶ 10.) Plaintiff further alleges: "At all relevant times, Defendant issued and maintained uniform, standardized scheduling and timekeeping practices and procedures for all non-exempt, hourly paid employees in California, including Plaintiff and others similarly situated, regardless of their location or position." (*Id.* ¶ 2.) Plaintiff further alleges: "Defendant subjects its non-exempt employees to work off-the-clock. Plaintiff and other non-exempt employees are required to arrive to their work locations approximately five (5) minutes early and put on their uniforms and wash hands prior to each shift. Further, Plaintiff alleges Defendant only had one time clock, and there would be four to five employees clocking in at the same time. As a result, Plaintiff and other non-exempt employees were required to wait in line without compensation." (*Id.* ¶ 3.) Plaintiff further alleges: "Defendant knew or should have known that as a result of company-wide practices and/or policies, Plaintiff and members of the Class were performing assigned duties off-the-clock before their shift and during their meal periods, and were suffered or permitted to perform work for which they were not paid. Because Plaintiff and members of the Class worked shifts

---

[1] In making its good faith calculations of the size of the purported class and the amounts-in-controversy being sought by the Complaint, Defendant does not concede or admit, in any fashion, that any claims for such amount, or any amounts, have legal or factual merit, or that the persons on behalf of which such claims are asserted could properly be certified as members of a class under Fed. R. Civ. P. 23, and reserves all rights and defenses to such claims.

of eight (8) hours a day or more or forty (40) hours a week or more, some of this off-the-clock work qualified for overtime premium pay." (*Id*. ¶ 64.)

**Second Cause of Action – Unpaid Wages and Minimum Wages.** Plaintiff alleges: "At all relevant times, Defendant issued and maintained uniform, standardized scheduling and timekeeping practices and procedures for all non-exempt, hourly paid employees in California, including Plaintiff and others similarly situated, regardless of their location or position." (*Id*. ¶ 2.) Plaintiff further alleges: "Defendant subjects its non-exempt employees to work off-the-clock. Plaintiff and other non-exempt employees are required to arrive to their work locations approximately five (5) minutes early and put on their uniforms and wash hands prior to each shift. Further, Plaintiff alleges Defendant only had one time clock, and there would be four to five employees clocking in at the same time. As a result, Plaintiff and other non-exempt employees were required to wait in line without compensation." (*Id*. ¶ 3.) Plaintiff further alleges: "Defendant suffered or permitted Plaintiff and members of the Plaintiff Class to work portions of the day for which Defendant failed to compensate them. This includes time spent under Defendant's control prior to clocking in and after clocking out." (*Id*. ¶ 71.) Plaintiff similarly alleges: "as a result of Defendant's policy of limiting the amount of overtime employees could accrue, employees are forced to work off-the-clock before their scheduled shift start times to change into their uniforms, wash hands, and wait in line to clock in. In addition, as set forth above, Defendant has a company-wide practice of requiring employees to change out of their uniforms during their meal breaks and after clocking out." (*Id*. ¶ 31.) Plaintiff and other non-exempt Plaintiff further alleges: "During the applicable time period, Defendant has and continues to have a pattern and practice of not providing its employees all wages, by failing to include all compensable time, including time worked off-the-clock." (*Id*. ¶ 78.) Plaintiff further alleges: "As a proximate result of the above-mentioned violations. Plaintiff and the Plaintiff Class have been damaged in an amount according to proof at time of trial." (*Id*. ¶ 79.)

Plaintiff further alleges that the failure to pay all wages, including minimum, straight-time and overtime wages, alleged in the First and Second Causes of Action constitutes unlawful business acts and practices and unfair competition within the meaning of Business and Professions Code Section 17200. (*Id*. ¶¶ 122-127).  The statute of limitations for such a claim is four years.  Cal. Bus. & Prof. Code § 17208 ("Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued"); *Cortez v. Purolator Air Filtration Products Co*., 23 Cal.4th 163, 178-179 (2000) (the four-year statute of limitations applies to any UCL claim, notwithstanding that the underlying claims have shorter statutes of limitation).

Based on a review of Defendant's business records, the 2,009 putative class members worked at least 361,341 shifts lasting at least 3.5 hours[2] from December 17, 2017 to the present, and received an average base hourly rate of $17.59.  (Scheible Decl. ¶ 5)

Assuming, *arguendo*, the truth of Plaintiff's allegations that "Defendant subjects its non-exempt employees to work off-the-clock. Plaintiff and other non-exempt employees are required to arrive to their work locations approximately five (5) minutes early and put on their uniforms and wash hands prior to each shift" (Compl. ¶ 3) and that "Defendant has and continues to have a pattern and practice of not providing its employees all wages, by failing to include all compensable time, including time worked off-the-clock" (*Id*. ¶ 78), putative class members are entitled to recover at least **$529,665.68** in **unpaid straight-time wages**[3]: $17.59 (average base

---

[2] This is more conservative than Plaintiff's allegations which place at issue ***all*** shifts based on the allegations that off-the-clock work resulted from Plaintiff and putative class members regularly having to wait in line to clock in and having to arrive 5 minutes early to put on their uniforms off-the-clock prior to clocking in, as well as time off-the-clock after the end of their shift and during meal periods.  (See Compl. ¶ 3, 31, 71.)

[3] This is more conservative than Plaintiff's allegations which state that "Because Plaintiff and members of the Class worked shifts of eight (8) hours a day or more or forty (40) hours a week or more, some of this off-the-clock work qualified for overtime premium pay" (Compl. ¶ 64) in that, for purposes of these calculations, Defendant assumes all of the alleged wages owed for off-the-

hourly rate for putative class members during the 4-year period) x 361,341 (work days over 3.5 hours worked by putative class during the applicable 4-year period) x 0.08333 hours (equivalent to 5 minutes) = $529,665.68.

**Third Cause of Action – Non-Compliant Meal Periods**. Plaintiff alleges: "Defendant did and does not provide Plaintiff and members of the Class with meal periods during which they are completely relieved of duty for at least thirty (30) minutes by the fifth hour of work and again by the tenth hour of work." (Compl. ¶ 85.) Plaintiff also alleges: "Plaintiff and members of the Class' meal periods are cut short as a result of hand washing and needing to change out of their uniforms during each meal period. Further, Plaintiff alleges that meal breaks have been interrupted by the requirement to keep their phones on during their meal breaks so that management may contact them as needed. Meal breaks are also late, as the assigned meal period time did not take into consideration the time Plaintiff and members of the Class worked off the clock." (*Id.* ¶ 86.) Plaintiff further alleges that Defendant "failed to pay Plaintiff and the members of the Plaintiff Class one (1) hour of pay at the regular rate for each off-duty meal period that they have been denied." (*Id.* ¶ 87.)

**Fourth Cause of Action – Non-Compliant Rest Periods**. Plaintiff alleges: "During the Class Period, Defendant regularly failed to authorize and permit members of the Class to take a ten (10) minute rest period per each four (4) hour period worked or major fraction thereof." (*Id.* ¶ 96). Plaintiff also alleges: "As a result of Defendant's practices and policies, Class members worked shifts in excess of 3.5 hours, in excess of 6 hours, and/or in excess of 10 hours without receiving an uninterrupted 10-minute rest periods to which they were entitled." (*Id.* ¶ 97). Plaintiff also alleges: "Defendant also has engaged in a company-wide practice and/or policy of not paying rest period premiums owed when compliant rest periods are not authorized and permitted." (*Id.* ¶ 98.) Plaintiff further alleges "Because of this practice and/or policy, Plaintiff and

---

clock work are straight-time wages entirely.

members of the Class have not received premium pay for all missed rest periods." (*Id*.)

Plaintiff further alleges that the failure to provide meal and rest period premiums alleged in the Third and Fourth Causes of Action constitutes unlawful business acts and practices and unfair competition within the meaning of Business and Professions Code Section 17200. (*Id*. ¶¶ 122-127). The statute of limitations for such a claim is four years. Cal. Bus. & Prof. Code § 17208 ("Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued"); *Cortez v. Purolator Air Filtration Products Co*., 23 Cal.4th 163, 178-179 (2000) (the four-year statute of limitations applies to any UCL claim, notwithstanding that the underlying claims have shorter statutes of limitation).

Based on a review of Defendant's business records, 2,009 putative class members worked approximately 361,341 work days over 3.5 hours during the 4-year period (including 352,976 work days over 5 hours) from December 17, 2017 to the present, and received an average base hourly rate of $17.59. (Scheible Decl. ¶ 5).

Assuming, *arguendo*, the truth of Plaintiff's allegations that "Defendant did and does not provide Plaintiff and members of the Class with meal periods during which they are completely relieved of duty for at least thirty (30) minutes by the fifth hour of work and again by the tenth hour of work" (Compl. ¶ 85), that "Plaintiff and members of the Class' meal periods are cut short as a result of hand washing and needing to change out of their uniforms during each meal period. Further, Plaintiff alleges that meal breaks have been interrupted by the requirement to keep their phones on during their meal breaks so that management may contact them as needed. Meal breaks are also late, as the assigned meal period time did not take into consideration the time Plaintiff and members of the Class worked off the clock" (*Id*. ¶ 86), and that "failed to pay Plaintiff and the members of the Plaintiff Class one (1) hour of pay at the regular rate for each off-duty meal period that they have been denied" (*Id*. ¶ 87), putative class members are entitled to recover at least **$1,552,211.96** for **unpaid meal period premium pay, assuming a conservative twenty-five percent (25%) violation rate**:

$17.59 (average base hourly rate for putative class members during the 4-year period) x 352,976 (work days over 5 hours worked by putative class during the applicable 4-year period) x 25% (assumed violation rate) = $1,552,211.96.

Assuming, *arguendo*, the truth of Plaintiff's allegations that "Defendant regularly failed to authorize and permit members of the Class to take a ten (10) minute rest period per each four (4) hour period worked or major fraction thereof," (Compl. ¶ 96), that "Defendant also has engaged in a company-wide practice and/or policy of not paying rest period premiums owed when compliant rest periods are not authorized and permitted," (*Id*. ¶ 98), and that Plaintiff and the putative class members "have not received premium pay for all missed rest periods" (*Id*.), putative class members are entitled to recover at least **$1,558,997.05** for **unpaid rest period premium pay, assuming a conservative twenty-five percent (25%) violation rate**: $17.59 (average base hourly rate for putative class members during the 4-year period) x 361,341 (work days over 3.5 hours worked by putative class during the applicable 4-year period) x 25% (assumed violation rate) = $1,558,997.05.

The foregoing meal period and rest period calculations assume a violation rate of 25%, which is consistent with the violation rates of up to 50-60% generally accepted by this Court as a reasonable assumption when calculating the amount in controversy for CAFA purposes. *See, e.g., Stanley v. Distribution Alts., Inc.*, No. EDCV172173AGKKX, 2017 WL 6209822, at *2 (C.D. Cal., Dec. 7, 2017) (accepting assumed violation rates of "three missed rest breaks, and three missed meal breaks per week" where the complaint offered no guidance as to the frequency of the alleged violations); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (60% violation rate was "conservative"); *Oda v. Gucci Am., Inc.*, 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015) (violation rate of 50%); *Mendoza v. Savage Servs. Corp.*, No. 219CV00122RGKMAA, 2019 WL 1260629, at *2 (C.D. Cal., Mar. 19, 2019) (holding in a case involving the same Plaintiffs' counsel that California district courts "routinely apply a 20% violation rate—that is, one missed meal and rest period per work week—

for meal and rest period premiums"); *Mortley v. Express Pipe & Supply Co.*, No. SACV 17-1938-JLS-JDE, 2018 WL 708115, at *4 (C.D. Cal., Feb. 5, 2018) (finding defendant's assumption that class members missed two meal periods and two rest periods each per week based on allegations of "a company-wide policy and/or practice of understaffing" was reasonable). Courts have even found that a plaintiff's allegation of uniform practices alone can be sufficient to permit a defendant to assume that violations of wage laws occurred 100% of the time. *See e.g., Amaya v. Consolidated Container Co.*, LP, 2015 WL 4574909, *2 (C.D. Cal. July 28, 2015) (allegation of "uniform" illegal practices, combined with no evidence from plaintiff rebutting an assumed 100% violation rate, sufficient proof of violation rates); *Buehler v. Saddle Creek Corp.*, 2015 WL 5618871, *2 (C.D. Cal. September 23, 2015), (holding "[v]iolation rates of 100% may not be patently unreasonable in the event that a plaintiff fails to include fact-specific allegations that would result in a violation rate discernibly smaller than 100%."); *Sanchez v. Russell Sigler, Inc.*, 2015 WL 1276539, at *6 (C.D. Cal. Apr. 28, 2015) (100 percent).

**Fifth Cause of Action – Non-Complaint Wage Statements (Labor Code § 226)**. Plaintiff alleges: "Defendant has knowingly and intentionally provided Plaintiff and other non-exempt employees with uniform, incomplete, and inaccurate wage statements." (Compl. ¶ 38; see also *id*. ¶ 103.) Plaintiff also alleges: "Defendant issued uniform wage statements to Plaintiff and other non- exempt employees that fail to correctly list: gross wages earned; total hours worked; net wages earned; and all applicable hourly rates in effect during the pay period, including rates of pay for overtime wages and/or meal and rest period premiums, and the corresponding number of hours worked at each hourly rate." (*Id*.) Defendant further alleges: "Because Defendant did not record the time Plaintiff and other non-exempt employees spent working off-the-clock and cut meal breaks short (and therefore time for which they should have been paid), and failed to provide compliant rest breaks, Defendant did not list the correct amount of gross wages and net wages earned by Plaintiff and other non-

exempt employees" on their wage statements. (*Id*. ¶ 39.) Plaintiff further alleges that, as a result, "Plaintiff and the members of the Class herein seek damages and penalties pursuant to California Labor Code § 226(e) for Defendant's violations of California Labor Code § 226(a)." (*Id*. ¶ 109.) Plaintiff and the other class members are entitled to recover from Defendants the greater of their actual damages caused by Defendants' failure to comply with California Labor Code section 226(a), or an aggregate penalty not exceeding four thousand dollars per employee." (*Id*. ¶ 100). California Labor Code §226(e) provides for a recovery of the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation of California Labor Code § 226(a) occurs and one hundred dollars ($100) for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000) per employee. Labor Code § 226(e).

Based on a review of Defendant's business records, Defendant employed 944 putative class members who were issued a total of at least 23,916 wage statements for the applicable pay periods during the one year limitations period from December 17, 2020 to the present. (Scheible Decl. ¶ 6).[4] Out of these 944 putative class members, 304 received 41 or more wage statements within the applicable one year limitations period. (*Id*.) Thus, these 304 putative class members are entitled to the maximum wage statement penalty of $4,000 ((1 wage statement x $50) + (40 wage statements x $100) = $4,050). Thus, the total wage statement penalties owed to these 304 putative class members would be $1,216,000 (304 putative class members x $4,000).

Further, the other 640 putative class members received fewer than 41 wage statements each during the applicable one year limitations period. (*Id*.) A total of 8,208 wage statements were received by these 640 putative class members who received fewer than 41 wage statements each. (*Id*.) These 640 putative class members are entitled to $788,800 in wage statement penalties: [640 (number of putative class

---

[4] Defendant pays its non-exempt employees on a weekly basis. (Scheible Decl. ¶ 4.)

members) x $50] + [(8,208 (wage statements issued during the one-year limitations period) - 640 (number of putative class members)) x $100] = $788,800.

Thus, according to Plaintiff's allegations, these 944 putative class members are entitled to recover at least **$2,004,800** in **wage statement penalties** under Labor Code § 226(e) ($1,216,000 + $788,800).

### D. Summary of Amount in Controversy.

Defendant denies all the material allegations of the Complaint and disputes all liability, including Plaintiff's entitlement to any recovery; however, as set forth above, the Complaint places in actual controversy more than the required $5,000,000 for purposes of removal under CAFA, even without considering the amounts placed in controversy by attorneys' fees. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (attorneys' fees may properly be included in calculation of the amount of controversy where an underlying statute authorizes an award of attorneys' fees).

| Claim | Amount in Controversy |
|---|---|
| Unpaid Wages | $529,666.68 |
| Unpaid Meal Premiums | $1,552,211.96 |
| Unpaid Rest Premiums | $1,588,997.05 |
| Wage Statement Penalties | $2,004,800.00 |
| **Total** | **$5,675,674.69** |

Accordingly, removal of this action under CAFA is proper under Section 1332(d).

### III. COMPLIANCE WITH OTHER REMOVAL REQUIREMENTS

### A. Timeliness

This Notice of Removal is timely filed as it is filed less than one year from the date this action was commenced and within 30 days of the December 22, 2021 date of service of the Summons and Complaint upon Defendant. 28 U.S.C. § 1446(b); *Murphy Bros., Inc v. Michetti Pipe Stringing, Inc*., 526 U.S. 344 (1999) (30-day

deadline to remove commences upon service of the summons and complaint).

**B.     Other Procedural Requirements**

As required by 28 U.S.C. § 1446, this Notice of Removal is filed in the district court of the United State in which the action is pending.  The state court action was pending in the Los Angeles Superior Court, which is located within the boundaries of this Court.  Thus, venue is proper in this Court.  28 U.S.C. § 1441(a).

As required by 28 U.S.C. § 1446, Defendant hereby provide this Court with copies of all process, pleadings and orders received by Defendant in this action (attached as "**Exhibit A**") and Defendant's Answer filed in the Superior Court (attached as "**Exhibit B**"); Defendant has not received or filed any pleadings, process or orders besides those attached.

WHEREFORE, Defendant removes this action to this Court.

DATED: January 21, 2022                     OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


By: /s/ David Szwarcsztejn
Nicole R. McAtee
David Szwarcsztejn

Attorneys for Defendant
MYDATT SERVICES, INC.

SMS-Garay - Notice of

12                                     Case No. 2:22-cv-469
DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DITRICT COURT
50004251.v1-OGLETREE